IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHERRI WILKERSON
        Plaintiff,

v.                                                Civil Action No. 3:20-cv-917

TOWN OF COLONIAL BEACH,
        Defendant.

## OPINION

This case involves an employment dispute between the plaintiff, Sherri Wilkerson, and her former employer, the Town of Colonial Beach (the "Town"). Wilkerson, who worked in the Town's Finance Department, claims that the Town fired her because of her age. The Town contends that it terminated Wilkerson's employment because she made personal calls, used Facebook at work, and submitted several inaccurate timecards.

When viewed in the light most favorable to her, Wilkerson presents evidence of age discrimination and shows that the Town's stated reasons for firing her serve as a pretext for age discrimination. Wilkerson's Age Discrimination in Employment Act ("ADEA") claim, therefore, survives, and the Court will deny the Town's motion for summary judgment.

## I. BACKGROUND[1]

Wilkerson began working for the Town in 2008. Although the Town paid Wilkerson a salary, it required her to record her hours worked "to accurately calculate employee leave time, and to accurately calculate employee compensatory time."[2] (ECF No. 12-3, at 2.)

---

[1] The following facts include those that the parties do not dispute and those that this Court concludes a reasonable jury could find based on the evidence in the record.

[2] In Wilkerson's opposition brief, she claims that she did *not* always have to keep track of her hours worked. (ECF No. 13, at 5.) But during her deposition, Wilkerson admits that she had to maintain her time records throughout her employment. (ECF No. 12-1, at 101:11-17.) And

Wilkerson worked as the Assistant to Town Manager Val Foulds through Foulds's retirement in the fall of 2017. After Foulds retired, Eddie Blunt served as Acting Town Manager for about six months. During this time, Wilkerson continued to work as Assistant to the Town Manager ("Assistant"). At some point during Blunt's tenure, he asked Wilkerson about the accuracy of one of her submitted timecards. Blunt recalled that Wilkerson left work early on the day in question to take care of her son, but Wilkerson's timecard reported a full day's work. After Blunt drew the discrepancy to her attention, Wilkerson realized that she had forgotten to change her timecard to account for her early exit so she "went in and changed the time card" and apologized for her mistake. (ECF No. 12-1 at 69:4–5.)

In February 2018, Quinn Robertson became Town Manager, and Wilkerson continued as Assistant. In March 2018, after examining the Town's financial position, Robertson decided to reorganize his staff. As part of this reorganization, Robertson assigned some of Wilkerson's duties to Cindy Vaughan, who worked at the front desk of the Town Hall.[3] He also reassigned Wilkerson to an open position in the Finance Department. Lisa Okes and Adam Schaefer supervised Wilkerson while she worked in the Finance Department. Gladys Gomez, the Town's acting Chief Financial Officer, supervised Okes and Schaefer.

Also in March 2018, Wilkerson requested accommodations under the Americans with Disabilities Act to allow her "to care for [her] minor son and mother." (ECF No. 12-3, at 3.) On March 30, 2018, Okes approved Wilkerson's request and let her adjust her work schedule and

---

Wilkerson offers no evidence to dispute this admission or the affidavit of the Town's Human Resource Manager Laura Corbin. The Court, therefore, finds no genuine dispute as to the issue.

[3] Almost immediately after assigning these duties to Vaughan, Robertson transferred Vaughan to the Finance Department and hired Maggie Lane "to perform . . . duties as the front desk person of Town Hall." (ECF No. 12-2, at 47:16–48:12.) Lane was in her early twenties when Robertson hired her. (*Id.* at 60:18–20.)

2

"accrue comp time; 30 minutes or less a day to cover absences needed for therapy and/or doctor appointments relating to [her] son or mother." (*Id.*) The Town later permitted Wilkerson to work an adjusted schedule and accrue compensatory time for her own medical needs. (ECF No. 12-4, at 130.)[4]

Despite the importance of maintaining accurate time records to calculate her accrued compensatory time, Wilkerson received two or three verbal warnings from her supervisors in the Finance Department about timesheet discrepancies.[5] After these verbal warnings, on August 7, 2018, Okes and Schaefer gave Wilkerson a written warning, explaining that, despite the previous verbal warnings, Wilkerson had "submitted additional timesheets with false times." (ECF No. 12-3, at 6.) They accused Wilkerson of inflating her hours by forty minutes during the July 22, 2018 pay period, and by one hour and fifty-five minutes during the August 5, 2018 pay period. (*Id.*) Okes and Schaefer contend that these discrepancies, which they call "theft," violated the Town's personnel policy.[6] (*Id.*) Wilkerson acknowledges "unintentionally" submitting incorrect time records but denies "willfully stealing . . . company time." (*Id.* at 7.)

---

[4] For clarity, the Court uses the page numbers listed in the top right corner of each page of Exhibit 4 to ECF No. 12.

[5] Although Wilkerson agrees that she received two or three verbal warnings from Okes, Schaefer, or Gomez, she does not specifically recall the June 12, 2018 verbal warning that the Town's records suggest. (ECF No. 12-1, at 122:1–11; ECF No. 12-3, at 4.)

[6] The Town's policy provides: "If an employee's work performance or behavior is deemed unsatisfactory, the following kinds of disciplinary action may be taken . . . : oral admonishment, written reprimand, suspension, disciplinary leave without pay, demotion, or termination." (ECF No. 12-4, at 162.) Included among the list of "misconduct that may result in discipline" is "[w]illfully falsifying Town records (including time records)." (*Id* at 163.) The August 7, 2018 written warning cites these provisions as those Wilkerson had violated.
   The Court notes that *willful falsification* of Town records requires intent. Because Wilkerson disputes forming this intent, the parties genuinely dispute whether Wilkerson "[w]illfully falsif[ied] Town records (including time records)." (*Id.*)

In October 2018, Wilkerson "was transferred" within the Finance Department from Payment Clerk to Accounts Payable Clerk. (ECF No. 12-1, at 89:16.) Okes, Schaefer, and Gomez still supervised Wilkerson.

On May 9, 2019, Wilkerson received her second written warning about her time records. (*See* ECF No. 12-4, at 98.) Again, Okes and Schaefer accused Wilkerson of violating the Town's policy by inflating her hours.[7] Specifically, Okes and Schaefer said she reported working three hours and twelve minutes more than she actually worked during the April 14, 2019 pay period and one hour and thirty minutes more than she actually worked during the April 28, 2019 pay period. As punishment, the Town suspended Wilkerson one day without pay. Again, Wilkerson claims that these discrepancies were unintentional.[8] She blames the April 2019 discrepancies on her confusion about the time increments used when reporting.[9]

In addition to the time record discrepancies, Okes and Schaefer had three additional complaints about Wilkerson: (1) her difficulty with over-encumbered line items; (2) her use of

---

[7] In the May 9, 2019 warning, Okes and Schaefer cited the same Town policies as they did in the August 7, 2018 warning. *See supra* footnote 6.

[8] Before January or February 2018, the Town's employees completed their time records on a physical form that they then submitted to their supervisor. (ECF No. 12-1, at 105:9–20.) After January or February 2018, the Town switched to "Edmunds finance software" ("Edmunds"), which required Town employees to maintain time records through a computer system. (*Id.* at 103:20–104:8.)

[9] Wilkerson suggests that the Town forbade her from accurately logging the hours she worked after 4:30 p.m. (*See* ECF No. 13-4 ¶ 6.) According to Okes, the Town authorized that Wilkerson receive credit for work performed before the start of the work day, but not for work performed after 4:30 p.m. (ECF No. 13-3, at 80:5–8.) Okes admits that nothing about Wilkerson's job prevented her from performing her job duties after 4:30 p.m., that no written restriction prevented her from working after 4:30 p.m., and that Okes could authorize that Wilkerson receive credit for work performed after 4:30 p.m. Based on this evidence and considering Wilkerson's ability to accrue compensatory time in increments of thirty minutes day, the Court concludes that a reasonable jury could attribute some amount of Wilkerson's timecard discrepancies to hours she worked after 4:30 p.m. but could not report.

social media on Town devices; and (3) her use of her personal phone. Regarding the over-encumbered line items, on May 2, 2019, Gomez and Okes met with Wilkerson about an instance in which she ran a report on the wrong account line item in Edmunds. (ECF No. 12-3, at 34.) Wilkerson had made similar mistakes in Edmunds before. Upon receiving this feedback, Wilkerson said that everyone makes mistakes. Okes and Gomez encouraged Wilkerson to check her work, which would lower the risk of making this sort of mistake in the future.

As for using social media, Wilkerson admits that she posted on Facebook during work. Indeed, she posted sixty-five times during work hours between April 9 and May 2, 2019. (*Id.* at 35–86; ECF No. 12-4, at 85–97.) The Town contends that this violated its policy that although it "may provide electronic, digital and wire communications equipment for business purposes," "[t]he use of this equipment should not be for personal use." (ECF No. 12-4, at 159.) Wilkerson, however, points to the unequal enforcement of this policy. Okes observed Jaleesa Hickman, another Town employee, use her work computer for personal use and did not counsel her to stop. (*See* ECF No. 13-3, at 110:14–21.) And Okes herself admitted to accessing her personal Facebook at work "[o]n occasion." (*Id.* at 27:14–16.) Further, Vaughan said "that others (including supervisors) use social media websites" during work. (ECF No. 12-4, at 123.)

Finally, although Wilkerson admits making personal phone calls during work hours, she claims that the only calls she made related to the care of her son for which she had received an accommodation from the Town. And Vaughan said that all Town employees "used [their] phones for personal reasons." (*Id.* at 123.) Okes, however, characterizes Wilkerson's personal calls as "frequent" and alleges that they violated the Town's policy. (*Id.* at 121, 159.) Wilkerson made these calls on her personal cell phone because the Town did not provide her an office phone despite multiple requests for one. (*Id.* at 123.)

Despite these perceived shortfalls, Wilkerson recalls Okes and Shaefer telling her that she "was doing a wonderful job," (ECF No.12-1, at 108:16–20), and "that they were very impressed with [her], and that [she] really was too hard on [her]self" about picking up the new computer system, Edmunds, (*id.* at 42:17–21). Indeed, Okes and Shaefer told her "on many occasions that they were very impressed with how [she] was picking up the new system." (*Id.* at 43:4–6.) Wilkerson's coworkers attest to her positive performance; one remembered that "Sherri was never late" when Flanagan had to sign checks, and another recalled that "Sherri was always caught up." (ECF No. 12-4, at 124.)

These positive reviews did not stop Robertson from deciding to fire Wilkerson on May 15, 2019, for making personal phone calls during work, using her work computer to access Facebook, and submitting inaccurate timesheets.[10] (*See* ECF Nos. 12-2, at 17:10–18:2, 26:4–9; 12-4, at 116.)

---

[10] After her termination, a reasonable jury could find that the Town added another justification for its decision to fire Wilkerson: her job performance. (ECF No. 12-4, at 130 ("a continued unwillingness to follow instructions and meet deadlines"). Although Robertson included job performance as one of the justifications in his affirmance of Wilkerson's termination, (*id.* at 129), Wilkerson, Okes, Schaefer, and Lane did not discuss job performance during Step 1 in the grievance process, (*id.* at 119). Robertson's notes from Step 3 in the grievance process say that Wilkerson's "work performance is irrelevant and was not the reason for her termination." (*Id.* at 127.) And the Town did not list job performance as a reason for terminating Wilkerson in its statement to the EEOC. (ECF No. 13-5.) Indeed, Robertson explained that Wilkerson's "termination did not involve her performance on the job." (ECF No. 12-2, at 17:14–16.) The Court takes Robertson, the person who decided to fire Wilkerson, at his word and does not consider Wilkerson's job performance as justification for her termination.
The Court recognizes that Wilkerson included "not completing work" as one of the reasons for her termination in the grievance hearing form she submitted to the Town on May 22, 2019. (ECF No. 12-4, at 116.) But, given all the evidence discussed above and because seven days separated Wilkerson's termination and the submission of her grievance hearing form, a reasonable jury viewing the evidence in the light most favorable to Wilkerson could find that her performance did not contribute to the Town's decision to fire her.
Notably, the Town's complaints regarding Wilkerson's job performance remain vague. (*See id.* at 121 ("[W]hen instructed by your supervisor to complete a task . . . , you either ignored the instructions or argued back that you did not have the time to perform the assigned tasks. Your continual unwillingness to follow the work instructions and meet deadlines given to you by your supervisor has not gone unnoticed."). The only specific example of a performance issue in the

6

Okes and Shaefer delivered the news to Wilkerson. At the time of her termination, Okes was fifty-one years old.

Before her termination, Wilkerson sensed that her job was in jeopardy when her colleagues "watched [her] all day long," seemingly waiting for her to make a mistake. (ECF No. 12-1, at 125:10–19.) Once "it became apparent to [Wilkerson] that [she] was being watched for some reason," she "wanted to be able to document what [she] was doing at all times of the day." (*Id.* at 126:5–13.) As part of these efforts, on May 10, 2019, she began keeping a personal timesheet. Vaughan confirmed Wilkerson's difficulties, explaining that "Sherri would cry every other day" and that she "felt like she was getting picked on." (ECF No. 12-4, at 124.) Kathy Flanagan, another Town employee, believed that Okes, Gomez, and maybe Robertson targeted Wilkerson and that it was "very obvious that movement was afoot to remove" her. (*Id.* at 125 (cleaned up).)

On May 22, 2019, Wilkerson filed a grievance with the Town, contesting her termination and seeking reinstatement to her position. (*Id.* at 116–17.) In her grievance, Wilkerson did not cite age discrimination. Instead, she challenged the Town's allegations that she made personal calls at work, used Facebook on her work computer, and submitted inaccurate timesheets. Wilkerson's grievance proceeded through the process outlined in the Town's Personnel Policies. In the end, Robertson upheld his decision to fire Wilkerson because of her "persistent personal use of the Town's communication equipment," her failure "to accurately record hours worked and leave time taken," and her failure "to heed instructions of [her] supervisors." (*Id.* at 129–30.) This latter reason arises, at least in part, from Wilkerson's failure to accurately complete her time records after receiving instructions to do so.

---

record is the over-encumbered line item issue discussed on May 2, 2019, less than two weeks before Wilkerson's termination.

At some point after Wilkerson's termination, the Town filled Wilkerson's position with an individual under forty years old. According to Okes, the Town promoted Jaleesa Hickman to the position Wilkerson left vacant. (ECF No. 13-3, at 126:13–17.) Hickman was less than forty years old when promoted. According to Robertson, Aneisha Thompson replaced Wilkerson. (ECF No. 12-2, at 70:3–15.) When hired, Thompson was "in her mid to late twenties." (*Id.* at 71:4–8.)

On March 3, 2020, Wilkerson filed a charge of discrimination with the EEOC, alleging age discrimination. (ECF No. 12-5.) On September 3, 2020, the EEOC notified Wilkerson that it had closed its file on her March 3 charge and that she could file a lawsuit alleging an ADEA violation within ninety days. (ECF No. 12-6.) Wilkerson filed her complaint with this Court on December 1, 2020, alleging that the Town violated the ADEA by firing her.

To support her ADEA claim, Wilkerson cites a comment that Okes made two days after Wilkerson's termination. Okes, addressing employees of the Town's Finance Department, said, "OK guys if anyone knows of someone who is young and smart like Jale[e]sa we would like to know. We really need to get the ball rolling on hiring someone." (ECF No. 13-6.) Okes sought to fill the position Wilkerson left vacant. Vaughan responded jokingly, "Hey how about someone who is old and slow like [me]?" (*Id.*) Okes then said, "Oh no we are not discriminating. You know what I mean." (*Id.*)[11]

---

[11] In support of her age discrimination claim, Wilkerson cites four additional alleged remarks made between October 2018 and May 2019.

The Court will not consider two of these statements as inadmissible hearsay. *See Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."). First, Robertson told a Town employee, maybe Kathleen Flanagan or Allyson Finchum, that all employees have a "shelf life" and that Wilkerson had exceeded hers. (ECF No. 1 ¶ 25; ECF No. 12-1, at 157:21–158:3.) The only evidence Wilkerson offers of this statement is her own deposition and because Wilkerson offers this statement to prove that Robertson made this remark, this statement is inadmissible hearsay. Second, Robertson told Finchum that "it was

8

## II. DISCUSSION[12]

The Town moves for summary judgment on Wilkerson's ADEA claim. Wilkerson argues that this motion should fail on the merits. But first, she says the Court should deny the motion—or, at least, consider all of Wilkerson's facts undisputed—because it does not set forth the undisputed facts in separate, numbered paragraphs as Local Rule 56(B) requires.

Although a party who moves for summary judgment does their opponent (and the Court) a favor by listing the undisputed facts in separate, numbered paragraphs, Local Rule 56(B) does not *require* such clarity. It merely requires a "listing." The Court remains skeptical of the Town's interpretation of "listing" as allowing unnumbered prose, but it declines to deny the motion or consider all Wilkerson's facts undisputed based on the Town's presentation of the undisputed facts.

The Court distinguishes each case that Wilkerson's cites on this issue. First, although the Court in *Blanch v. Hexagon U.S. Federal, Inc.*, interpreted Local Rule 56(B) as requiring separate,

---

obvious [Wilkerson] didn't take care of herself." (*Id.* at 53:1–18 (cleaned up).) This statement is also inadmissible hearsay for the same reasons.

The Court finds that the remaining two remarks do not evince any age-based animus, even when drawing all reasonable inferences in Wilkerson's favor. First, Gomez asked Vaughan and Flanagan whether Wilkerson had considered not returning to work after her surgery. Second, Okes called Wilkerson while Wilkerson recovered from surgery in the hospital. During this call, Okes asked Wilkerson whether she had considered not returning to work. Because no reasonable jury could find that these statements support Wilkerson's age discrimination claim, the Court declines to consider them in its analysis. Notably, the Court will also not consider Gomez's question to Vaughan and Flanagan because it is inadmissible hearsay.

[12] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

9

numbered paragraphs, its pretrial order *explicitly* set forth this requirement. No. 1:17cv613, 2018 WL 4997644 (E.D. Va. Oct. 15, 2018), ECF No. 42, at 1, n. 1 ("As required by Local Civil Rule 56, each brief in support must include a separately captioned section with the brief listing, in number-paragraph form, each material fact that the movant contends is undisputed . . . ."). *Phillips v. Esper* presented the same situation. No. 1:19-cv-362, 2020 WL 3579796 (E.D. Va. June 30, 2020), ECF No. 13, at 3. Here, this Court's pretrial order does not specify that the movant must list its undisputed facts in numbered paragraphs.

Further, the movant in *Wood v. Credit One Bank* failed to offer the undisputed facts in a separate section at all. 277 F. Supp. 3d 821, 828 (E.D. Va. 2017). Because the Town set forth the undisputed facts in a separate section, the Court "refuse[s] to elevate form over substance and, instead, will excuse the party's failure to comply with [Local Rule 56(B)]" to the extent it requires the Town to set forth the undisputed facts in separate, numbered paragraphs. *Id.* at 829 (quoting *CertusView Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13cv346, 2015 WL 4717256, at *4 (E.D. Va. Aug. 7, 2015)).

\* \* \*

Having addressed the parties' structural squabble, the Court next considers whether Wilkerson's ADEA claim survives the Town's motion on the merits.

### A. ADEA Claim

The ADEA prohibits employers from discriminating against employees because of age. 29 U.S.C. § 623 (2016). To succeed on an ADEA claim, a plaintiff must prove that her employer took adverse employment action against her because of her age. *Id.*; *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). "[A]n employee cannot prevail on an age discrimination claim by showing that age was *one* of multiple motives for an employer's decision; the employee must

prove that the employer *would not have fired her* in the absence of age discrimination." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019).

"The Fourth Circuit has outlined 'two avenues of proof' through which 'a plaintiff may avert summary judgment and establish a claim for intentional . . . age discrimination.'" *Gordon v. Napolitano*, 863 F. Supp. 2d 541, 546 (E.D. Va. 2012) (quoting *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004)). "[T]he indirect, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its descendants" offers one avenue, and direct evidence of discrimination offers the other. *Hayes v. Sotera Def. Sols., Inc.*, No. 1:15cv1130, 2016 WL 2827515, at *4 (E.D. Va. May 12, 2016).

### 1. *Circumstantial Evidence*[13]

Plaintiffs can establish an ADEA claim through indirect evidence "by way of the *McDonnell Douglas* framework." *Id.* Under the *McDonnell Douglas* burden-shifting scheme, if the plaintiff presents a prima facie case of discrimination, the burden shifts to the defendant to articulate a valid, nondiscriminatory reason for the termination. *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011). If the defendant does so, the burden shifts back to the plaintiff to prove that the articulated reason served as pretext for discrimination. *Id.* at 558–59.

#### a. Prima Facie Case

To make a prima facie case of age discrimination, a plaintiff must show that (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) she performed at a level that met her employer's legitimate expectations at the time of the employment action; and (4) "a

---

[13] Wilkerson also argues that she can establish her ADEA claim through direct evidence, the other "avenue of proof." Because the Court finds that Wilkerson establishes her claim with indirect evidence, the Court need not address this other avenue.

11

substantially younger individual with comparable qualifications replaced her." *Westmoreland*, 924 F.3d at 725. The burden of making a prima facie case "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Here, the parties dispute only the third element of the prima facie case: whether Wilkerson performed her job at a level that met the Town's legitimate expectations at the time of the employment action. "[W]hether an employee met his employer's legitimate expectations at the time of termination depends on the 'perception of the decision maker[,] . . . not the self-assessment of the plaintiff.'" *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)). In other words, "[the employer]'s opinion of [the employee]'s performance, not [the employee]'s own opinion," establishes this element of the prima facie case. *Blanch v. Hexagon U.S. Fed., Inc.*, No. 1:17-cv-613, 2018 WL 4997644, at *6 (E.D. Va. Oct. 15, 2018). The evidence must "address whether management honestly believed that [the employee]" did a good job at the time of the challenged employment action. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998), *overruled on other grounds*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

The Town contends that Wilkerson fell far short of its legitimate expectations by making personal calls at work, using Facebook on her work computer, and submitting inaccurate timesheets. Regarding the personal calls, Wilkerson admits to making some personal calls from her cell phone during work. (ECF No. 12-4, at 120.) But Town employees commonly used work phones for personal business. (*See id.* at 123 ("We all used our phones for personal reasons."); ECF No. 13-3, at 94:15–18 (Question: "Did you [(Okes)] ever make or receive phone calls during work hours related to [personal matters]?" Answer: "A few.")). And because Wilkerson did not

have an office phone, she used her cell phone for business purposes. (ECF No. 12-4, at 120 (Wilkerson "used her personal phone to text department heads/vendors, reach[] out to Edmunds, send[] pictures to department heads for needed items, etc."). This raises doubt about how well Wilkerson's supervisors could monitor the nature—personal or business—of Wilkerson's calls. Further, before Wilkerson's termination, none of her supervisors warned her about "the excessive use of work time for personal matters." (ECF No. 12-1, at 108:6–20.) Based on this evidence and drawing all reasonable inferences in Wilkerson's favor, the Court finds a genuine dispute remains regarding whether Wilkerson's personal phone use honestly fell below the Town's legitimate expectations.

Next, the Town argues that Wilkerson's use of Facebook at work also fell short of its legitimate expectations. The Town provides evidence that Wilkerson used Facebook during work. (*See* ECF Nos. 12-3, at 35–86; 12-4, at 85–97.) Indeed, Okes found sixty-five Facebook posts made by Wilkerson between April 9 and May 2, 2019, during work hours. But Okes herself admits to logging into her own Facebook during work hours "[o]n occasion." (ECF No. 13-3, at 27:16.) And other employees also used social media websites during work. (ECF No. 12-4, at 123.) The Court understands that the Town's concern with Wilkerson's use of Facebook is a matter of degree; Okes "witnessed [Wilkerson] on Facebook almost every time [she] walked into the office." (ECF No. 13-3, at 27:12–13.) But because none of Wilkerson's supervisors warned her about "the excessive use of work time for personal matters" before firing her and because other Town employees used Facebook at the office, the Court finds that a genuine dispute remains about

whether Wilkerson's Facebook use actually fell below the Town's legitimate expectations. (ECF No. 12-1, at 108:11–20.)[14]

Finally, the Town says that Wilkerson's failure to keep accurate time records fell below its legitimate expectations. The Court recognizes that Wilkerson submitted several timecards that contained inaccuracies between 2018 and May 2019. Despite her repeated struggle to accurately complete her timecards, Wilkerson also received positive feedback about her job performance during this time. For instance, Okes and Shaefer told her that she "was doing a wonderful job," (ECF No. 12-1, at 108:16–20), and "that they were very impressed with how [she] was picking up [Edmunds, ]the new system," (*id.* at 43:4–6). Viewing this positive feedback alongside the sporadic enforcement of Wilkerson's relatively minor timesheet discrepancies between 2018 and May 2019, the Court finds that Wilkerson raises a genuine dispute about whether her job performance, including her inaccurate timekeeping, met the Town's legitimate expectations. *See Westmoreland*, 924 F.3d 718, 725 (4th Cir. 2019) (explaining that the burden of proving a prima facie case "is not onerous" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981)).

Thus, drawing all reasonable inferences in Wilkerson's favor, the Court finds that she makes a prima facie case of age discrimination.

### b. Legitimate, Nondiscriminatory Reasons

When an employee has established a prima facie case, the burden shifts to the employer to set forth a valid, nondiscriminatory reason for the employment action. "To do so, the employer

---

[14] The Town contends that Wilkerson's Facebook use violated its policy. But many Town employees—including Okes—also violated this policy. It seems, therefore, that the Town does not actually expect its employees to comply with its policy. The record contains insufficient evidence for the Court determine exactly how far below full compliance the Town sets its legitimate expectations.

14

must 'produc[e] evidence that' it acted 'for a legitimate, nondiscriminatory reason.'" *Id.* at 725. "This burden is one of production, not persuasion." *Id.* (quoting *Reeves*, 530 U.S. at 150 (internal quotation marks omitted)).

The Town offers three reasons for its decision to terminate Wilkerson's employment: Wilkerson making personal calls at work, using Facebook on her work computer, and submitting inaccurate timesheets.[15] The Town offers evidence to support each reason.

### c. Pretext

After the employer has offered a valid, nondiscriminatory reason for the employment action, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (alteration in original) (quoting *Reeves*, 530 U.S. at 143). To meet this burden, a plaintiff must first show that the employer proffered a false reason. *Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 525 (E.D. Va. 2013). Second, a plaintiff must establish, through inference or otherwise, that age discrimination was the employer's real reason for the employment action. *Id.* Proving the employer's reason "unpersuasive, or even obviously contrived," will not establish discrimination—a plaintiff must meet *both* prongs of the test. *Id.; cf. Arthur v. Pet Dairy*, 593 F. App'x 211, 219 (4th Cir. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)) ("[T]he plaintiff must present evidence that discriminatory animus was a 'necessary logical

---

[15] For the reasons discussed *supra* footnote 10, the Court does not consider among these legitimate, nondiscriminatory reasons the Town's allegations regarding Wilkerson's job performance. Even if it did, considering Roberts's deposition testimony that Wilkerson's "termination did not involve her performance on the job," (ECF No. 12-2, at 17:14–16), and Okes's comment suggesting that the Town sought to fill Wilkerson's position with someone young, the Court finds that a reasonable juror could find pretextual any contention by the Town that it terminated Wilkerson's employment because of her job performance.

condition' for the adverse employment action and that the employer did not act 'because' of other legitimate motivations for the action.").

But age discrimination "need not be the sole cause of the adverse employment action" to satisfy this test. *Arthur*, 593 F. App'x at 220. In other words, "an employee need not refute each negative mark on his record or every possible legitimate ground for the employment decision to avoid summary judgment." *Id.* "Rather, according to *Gross*, to prevail on summary judgment the employee must only demonstrate, age-related considerations aside, that under the circumstances these other nondiscriminatory grounds did not animate the employer to take the adverse employment action." *Id.*

The Town says it fired Wilkerson because she made personal calls at work, used Facebook on her work computer, and submitted inaccurate timesheets. In support of these reasons, the Town offers testimony from Wilkerson's supervisors, evidence of sixty-five Facebook posts Wilkerson made between April 9 and May 2, 2019, while at work, and evidence of several inaccurate timesheets and the verbal and written warnings that followed them. Wilkerson tells a different story; she says the Town fired her because of her age. In support of her allegation, Wilkerson offers evidence—outlined in Section II.A.1.a—that undermines the sincerity of the Town's reasons: evidence that none of her supervisors warned her about the excessive use of work time for personal matters, and that other Town employees used work phones for personal business and logged onto Facebook at work. Wilkerson also cites the comment made by Okes two days after Wilkerson's termination.

Wilkerson has produced evidence—when viewed in the light most favorable to her—that the Town offered false reasons to explain her termination as pretext for age discrimination. Regarding the falsity, for all the reasons discussed in Section II.A.1.a, a reasonable jury could find

that the Town did *not* fire Wilkerson because she made personal calls, used Facebook at work, or submitted inaccurate timesheets. Instead, a reasonable jury could find—based on Okes's comment, the Town's post hoc justifications, and Wilkerson's coworkers' recollections about Wilkerson's struggles in the Finance Department—that Wilkerson's age motivated the Town's decision to fire her.

Specifically, Okes told several members of the Finance Department to share the names of any "young and smart" people to replace Wilkerson—a direct admission that the Town hoped to hire a young person. (ECF No. 13-6.) Although the Court recognizes the difference between hoping to hire a young person and firing an older person because of their age, Okes's comment, when viewed in the light most favorable to Wilkerson, lends support to the latter theory. Further, Okes's response to Vaughan's joke (that the Town hire someone "old and slow" like her) makes the Town's discriminatory animus even more likely. (*Id.*) Okes responded: "Oh no we are not discriminating. You know what I mean."[16] (*Id.*) A reasonable jury could find that Okes's quick denial of discrimination makes the Town's decision to fire Wilkerson based on her age more likely.

In addition, as described in footnote 10, the Town added another justification for firing Wilkerson *after* her termination: her job performance. But Robertson, who made the ultimate decision to fire Wilkerson, testified that Wilkerson's "termination did not involve her performance on the job." (ECF No. 12-2, at 17:14–16; *see also* ECF Nos. 12-4, at 119, 127; 13-5.) To a reasonable jury viewing all the evidence in Wilkerson's favor, this change of tune indicates that

---

[16] *Cf.* William Shakespeare, *Hamlet*, Act 3, Scene 2 ("The lady doth protest too much, methinks.").

17

the Town recognized a need to fortify its initial justifications. This, in turn, suggests that the Town understood the weakness of its original justifications.

Finally, Wilkerson's coworkers recall that she often cried at work and felt that her supervisors picked on her. Flanagan noted a "very obvious . . . movement" to fire Wilkerson preceded her May 15 termination. (ECF No. 12-4, at 125 (cleaned up).) These recollections provide additional context to Wilkerson's claim.

In sum, a reasonable jury drawing all reasonable inferences in Wilkerson's favor could find false the Town's proffered reasons for firing Wilkerson. *Cf. Reeves*, 530 U.S. at 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."). This reasonable jury could also find—based on Okes's comment, her quick protestation to an oblique suggestion of discrimination, the Town's post hoc justifications, and Wilkerson's coworkers' recollections—that the Town fired Wilkerson because of her age. *Ramos*, 963 F. Supp. 2d at 525.

### III. CONCLUSION

The Court concludes that a reasonable jury could find for Wilkerson on the evidence presented. Because the evidence of this case is *not* "so one-sided that one party must prevail as a matter of law," the Court will deny summary judgment for the defendant. *Anderson*, 477 U.S. at 252.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 2 July 2021
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge